IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BOUMEDIENE,<br>　　　Petitioner,<br>　　v.<br><br>GEORGE W. BUSH,<br>　　　President of the United States,<br>　　　et al.,<br>　　　　　Respondents. | Civil Action No. 04-cv-1166 (RJL) |
| MAMMAR,<br>　　　Petitioner,<br>　　v.<br><br>GEORGE W. BUSH,<br>　　　President of the United States,<br>　　　et al.,<br>　　　　　Respondents. | Civil Action No. 05-cv-0573 (RJL) |
| AL GINCO,<br>　　　Petitioner,<br>　　v.<br><br>GEORGE W. BUSH,<br>　　　President of the United States,<br>　　　et al.,<br>　　　　　Respondents. | Civil Action No. 05-cv-1310 (RJL) |
| AL BIHANI,<br>　　　Petitioner,<br>　　v.<br><br>GEORGE W. BUSH,<br>　　　President of the United States,<br>　　　et al.,<br>　　　　　Respondents. | Civil Action No. 05-cv-1312 (RJL) |

| | ) | |
|---|---|---|
| GHAZY, | ) | |
|     Petitioner, | ) | |
|     v. | ) | Civil Action No. 05-cv-2223 (RJL) |
| | ) | |
| GEORGE W. BUSH, | ) | |
|     President of the United States, | ) | |
|     et al., | ) | |
|     Respondents. | ) | |
| _____ | ) | |
| | ) | |
| RUMI, | ) | |
|     Petitioner, | ) | |
|     v. | ) | Civil Action No. 06-cv-0619 (RJL) |
| | ) | |
| GEORGE W. BUSH, | ) | |
|     President of the United States, | ) | |
|     et al., | ) | |
|     Respondents. | ) | |
| _____ | ) | |

**GOVERNMENT'S REPLY IN SUPPORT OF
MOTION TO DISMISS IMPROPER RESPONDENTS**

Respondents filed identical motions in each of the above captioned matters, which moved this Court to dismiss all improper respondents from these actions, including the President of the United States and, with the exception of the Secretary of Defense, all Department of Defense ("DOD") respondents. Each petitioner filed a separate opposition. Upon reviewing the oppositions, respondents recognized that most incorporated identical objections; in fact, in many cases the language in the oppositions is the same verbatim. In the interests of judicial efficiency, respondents are filing this identical reply in all of the above-captioned cases, rather than submitting multiple replies with the same and overlapping arguments.

The proper respondent to a habeas petition traditionally is the person who has immediate custody over the petitioner (although the Supreme Court has found an exception that applies

here, under which the Secretary of Defense is the proper respondent). Clearly, the President does not have immediate custody over these petitioners. Moreover, this Court lacks authority to order the President to grant petitioners' request for habeas relief. Consequently, the President should be dismissed as a party to these actions.

In these particular cases, the Secretary of Defense, in his official capacity, exercises legal control over these petitioners. Because the Supreme Court exception to the traditional rule of immediate custody for extraterritorial detentions applies here, the Secretary of Defense is the proper respondent. As any additional DOD respondents are redundant and superfluous, they should be dismissed.

## ARGUMENT

**I.    THE PRESIDENT IS AN IMPROPER RESPONDENT BECAUSE HE LACKS IMMEDIATE CUSTODY OVER THESE PETITIONERS.**

Rule 28 U.S.C. § 2242 directs an applicant for a writ of habeas corpus to detail "the name of the person who has custody over him . . . ."[1] In traditional habeas litigation, the proper respondent is the person with immediate custody over the applicant, for example "the warden of the facility where the prisoner is being held," and "not . . . some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004); *see also id.* (The custodian is the person "with the ability to produce the prisoner's body before the habeas court."); *al-Marri v.*

---

[1] Technically, the habeas statute does not apply. Because the Military Commissions Act eliminates statutory habeas for these petitioners in its entirety, and is unconstitutional only to the extent that the Suspension Clause mandates habeas review in this context of its own force, the only appropriate procedures are those required by the Constitution itself. *Boumediene v. Bush*, 128 S.Ct. 2229, 2278 (2008) (Souter, J., concurring) ("Subsequent legislation eliminated the statutory habeas jurisdiction over these claims, so that now there must be constitutionally based jurisdiction or none at all."). Nevertheless, respondents cite to cases under the statute in this reply as they provide principles that make sense to apply here.

*Rumsfeld*, 360 F.3d 707, 708 (7th Cir. 2004) ("[F]or an inmate of a brig, jail, or prison the 'custodian' is the person in charge of that institution."). That rule traditionally applies in the context of military detentions.[2] *See Padilla*, 542 U.S. at 447 ("including in the context of military detentions: Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody . . . he should name his warden as respondent."). Obviously, that person is not the President of the United States.

Some petitioners contend that dismissing the President would allow the Government to evade this Court's authority simply by transferring his custody to another agency, e.g. the Central Intelligence Agency (CIA). This argument actually conflates the immediate custodian rule with the corollary 28 U.S.C. § 2241(a) jurisdictional rule, which limits a court's granting of habeas relief to "within [its] respective jurisdiction[]." Although Guantanamo Bay is not physically within this Court's geographic jurisdiction, under *Boumediene v. Bush*, 128 S.Ct. 2229 (2008), the Court has jurisdiction over these Guantanamo Bay habeas cases, including petitioners'. *See id.* at 2274 ("that there is no jurisdictional bar to the District Court's entertaining petitioners' [habeas] claims"). Petitioners' argument therefore amounts to the following: in the event that a petitioner is transferred to another U.S. Government agency, this Court might lose jurisdiction in the same way a court could lose 28 U.S.C. § 2241(a) jurisdiction over a traditional habeas petitioner whose physical custody is transferred to a different judicial district. *See al-Marri*, 360 F.3d at 710 ("Appellate courts regularly dismiss actions under § 2241 filed outside the judicial district that contains the place of the prisoner's detention."). However, that argument fails

---

[2] As respondents discuss in Section III below, in these cases an exception from the traditional rule exists in that the Secretary of Defense, as opposed to commanding officers at the Guantanamo Bay detention facility, should be the only named respondent.

because under *Boumediene* the Court could still exercise jurisdiction over the custodian of persons held by the U.S. Government at Guantanamo Bay. *See also, Rasul v. Bush*, 542 U.S. 466, 478-79 (2004) ("'the writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody,' a district court acts 'within [its] respective jurisdiction' within the meaning of § 2241 as long as 'the custodian can be reached by service of process.'") (internal citation omitted). By contrast, under petitioners' reasoning, whether a person was held at Guantanamo Bay or domestically, the President would be a necessary respondent to maintain jurisdiction in the event of a highly speculative transfer to another U.S. agency or facility.

Indeed, some petitioners assert that they have not merely named the President as their "future custodian," *see e.g.*, Mammar Opp. at 5, but their arguments reveal that is exactly what they are doing -- asking the Court to keep the President as a respondent to preserve prospective, and not current, jurisdiction. *See e.g.*, *id.* at 4 and Boumediene Opp. at 4 ("the unique situation of Petitioner and other Guantánamo detainees suggests that the President should remain a named Respondent. If the President is dismissed, then the Government can evade this Court's authority simply by transferring the detainee from the custody of the Department of Defense (DoD) to" other agencies). Such petitioners are therefore encouraging the Court to keep the President as a respondent so that the Court can maintain *its* jurisdiction in the event a petitioner is transferred to another U.S. Government agency, and not because it is necessary to the resolution of these cases. Clearly, adding respondents to a habeas petition to protect *a court's jurisdiction* is inapposite to habeas law and would eviscerate the immediate custodian rule, even in a domestic setting. And, as explained above, under *Boumediene* the Court has jurisdiction over these Guantanamo Bay

habeas cases regardless of whether the President is a respondent. The Court should not credit petitioners' argument.

Some petitioners attempt to salvage their objections by contending that petitioners' custody at Guantanamo Bay was authorized by the President. There is a distinct difference, however, between the President having authority to authorize custody and actually executing physical custody over a detainee. *See e.g.*, *al-Marri*, 360 F.3d at 708 ("True, the President authorized al-Marri's custody by designating him as an enemy combatant, but there is a difference between authorizing and exercising custody."). As the Supreme Court examined in *Padilla*, to hold that the person who authorizes physical custody is a proper respondent is directly at odds with the immediate custodian rule. 542 U.S. at 435-39 ("If the [] immediate custodian rule applies in this case, Commander Marr-the equivalent of the warden at the military brig-is the proper respondent, not Secretary Rumsfeld."). The Supreme Court went on to reject Padilla's argument that the immediate custodian rule was "flexible" and had been relaxed in cases involving "prisoners detained for other than federal criminal violations." *Id.* at 437 (internal quotation marks omitted). Arguing that neither the habeas statute nor case law supported such a determination, the Court concluded:

> We have never intimated that a habeas petitioner could name someone other than his immediate physical custodian as respondent simply because the challenged physical custody does not arise out of a criminal conviction. Nor can we do so here just because Padilla's physical confinement stems from a military order by the President.

*Id.* at 439. Indeed, to hold that the proper respondents for habeas relief are those who authorize custody would open a Pandora's box; conceivably any person responsible for authorizing custody could be named as a respondent. *See e.g.*, *al-Marri*, 360 F.3d at 711 (Detailing that under such a

conclusion "the prosecutor, the trial judge, or the governor would be named as respondents in post-conviction proceedings under § 2241 and § 2254; yet no one believes that to be a sound understanding of these statutes."). Consequently, the proper respondent to a habeas petition traditionally is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242. Again, that person is not the President. *See al-Marri v. Rumsfeld*, 360 F.3d at 708 ("the President could not be called al-Marri's custodian even if he were otherwise an appropriate litigant.").

II.   **THE COURT LACKS JURISDICTION TO ORDER THE PRESIDENT TO GRANT HABEAS RELIEF; THEREFORE THE PRESIDENT SHOULD BE DISMISSED AS A RESPONDENT.**

Separately, but just as fundamentally, federal courts lack jurisdiction over the President in regard to the performance of his official duties that are executive, political, or discretionary. *See Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992) (plurality) ("the District Court's grant of injunctive relief against the President himself is extraordinary . . . . in general 'this court has no jurisdiction of a bill to enjoin the President in the performance of his official duties.'") (citing *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867)). Respondents are not arguing that a President is *absolutely* immune from the judicial process; as explained in respondents' motion, the Supreme Court has left open whether the President may be ordered to perform a purely "ministerial" duty.[3] *Franklin*, 505 U.S. at 802. But, in general, the President may not be ordered to perform executive acts "at the behest of the Judiciary." *Id.* at 827 (Scalia J. concurring in part and concurring in the judgment). Instead, suits contesting actions of the executive branch, including the President, "should be brought against the President's subordinates." *al-Marri v.*

---

[3] A ministerial duty is typically defined as a duty "to which nothing is left to discretion. It is a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law." *Johnson*, 71 U.S. (4 Wall.) at 498 (cited in *Franklin*, 505 U.S. at 802-03).

*Rumsfeld*, 360 F.3d at 708; *see also Franklin*, 505 U.S. at 802 ("injunctive relief against executive officials like the Secretary of Commerce is within the courts' power"); *id.* at 828 (Scalia J. concurring in part and concurring in the judgment) ("Review of the legality of Presidential action can ordinarily be obtained in a suit seeking to enjoin the officers who attempt to enforce the President's directive . . . .").

Clearly the President's designation of these petitioners as enemy combatants is not one lacking in discretion. At a minimum, the President has been granted broad discretionary authority by Congress in the Authorization for Use of Military Force ("AUMF"), Pub. L. No. 107-40, 115 Stat. 224 (2001), including the authorization to use "all necessary and appropriate force" against "nations, organizations, or persons" associated with the September 11, 2001, terrorist attacks. Such a delegation of authority, where the President has been authorized to use significant independent authority to defend the nation, is certainly not ministerial. *See United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936) ("in time of war," congressional legislation "must often accord to the President *a degree of discretion and freedom* . . . which would not be admissible were domestic affairs alone involved") (emphasis added). Nor does the President's authority to detain petitioners under his Article II powers fall into the category of ministerial. *See Padilla v. Rumsfeld*, 352 F.3d 695, 712 (2nd Cir, 2003) (rev'd on other grounds) ("We agree that great deference is afforded the President's exercise of his authority as Commander-in-Chief . . . .We also agree that whether a state of armed conflict exists against an enemy to which the laws of war apply is a political question for the President, not the courts.").

As the Supreme Court recognized in *Hamdi v. Rumsfeld*, 542 U.S. 507, 518 (2004) (plurality), by enacting the AUMF, Congress expressly authorized the President as Commander-

in-Chief to capture and detain enemy combatants for the duration of the conflict with the Taliban and al Qaeda. In practice, the designation of an enemy combatant is a determination based upon factual findings by the President. *See e.g. Padilla*, 542 U.S. at 431 ("The President also made several factual findings explaining his decision to designate Padilla an enemy combatant."). Once those findings are made, the President has discretion regarding the detention of an enemy combatant. *Id.* ("[T]he President concluded that it is consistent with U.S. law and the laws of war for the Secretary of Defense to detain Mr. Padilla as an enemy combatant.") (internal citation and quotation marks omitted). To grant these petitioners habeas relief, the Court would have to order declaratory or injunctive relief against the President that would impact actions far from ministerial.

In their Oppositions, several petitioners cite primarily to three cases for the proposition that a court's inability to enjoin the duties of the President for non-ministerial actions, as settled in *Mississippi v. Johnson*, has been narrowed or abridged. These cases, however, do nothing of the sort. The first, *Nixon v. Sirica*, 487 F.2d 700 (D.C. Cir. 1973), focused on whether the President is absolutely immune from the compulsory process of a court, in this case a grand jury subpoena *duces tecum* to produce certain evidence. Contrary to petitioners' argument, the *Sirica* Court did not limit the reach of *Johnson*. The Court found that the President lacked judicial immunity where, "the President [took] personal custody of the [subpoenaed evidence] and [was] thus himself a party to the present action," *id.* at 709, as opposed to the finding in *Johnson* that the "bill of injunction [at issue] was an attempt to coerce a discretionary, as opposed to ministerial, act of the Executive," *id.* at 712, n.53. In reaching its holding, the Court acknowledged that previous decisions which found "that the Executive Branch enjoys an

unreviewable discretion in many areas of 'political' or 'executive' administration" were "true," but those decisions were distinguishable as they were "irrelevant to the issue of presidential immunity from judicial process" as presented in *Sirica*. *Id.* at 712.

Likewise, the Court in *National Treasury Employees Union v. Nixon*, 492 F.2d 587 (D.C. Cir. 1974), also distinguished itself from *Johnson*. The Court found the issue in question, whether appellants were entitled to have the President put into effect a pay raise, was a purely *ministerial* act, which did not present a political or discretionary question. *Id.* at 602-03. The Court explained that *Johnson* specifically left open the question as to "whether a court can compel the President to perform a ministerial act," and then differentiated *Nixon* from other cases that found the judiciary has no jurisdiction to enjoin the President for duties that are executive, discretionary, or political in nature. *Id.* at 606-15. As the Court explained, "[b]ecause this suit presents neither a nonjusticiable political question nor a constitutional challenge to a statute giving the President discretionary duties, *Mississippi v. Johnson* does not require dismissal of this suit." *Id.* at 614.

The third case, *Clinton v. Jones*, 520 U.S. 681 (1997), does not even come close to raising the jurisdictional issues that are central to petitioners' claims of habeas relief from the President. *Jones* focused on the jurisdictional limits of a civil cause of action against a sitting President for actions he committed prior to assuming office. As the Court explained:

> Whatever the outcome of this case, there is no possibility that the decision will curtail the scope of the official powers of the Executive Branch. The litigation of questions that relate entirely to the unofficial conduct of the individual who happens to be the President poses no perceptible risk of misallocation of either judicial power or executive power.

*Id.* at 701. Although in reaching its decision the Court did state that "the President is subject to

judicial process in appropriate circumstances," *id.* at 703, it did not in any way curtail the jurisdictional limits on enjoining the President for official actions while in office. [4]

In sum, these cases do nothing to limit the general principle that a court lacks power to enjoin or order Presidential actions that are non-ministerial.[5] The Court therefore lacks jurisdiction and should conclude that the President is an improper respondent and dismiss him.

### III. THE SECRETARY OF DEFENSE CAN EFFECTUATE ANY ORDERED RELIEF; THEREFORE ANY ADDITIONAL DEPARTMENT OF DEFENSE RESPONDENTS ARE SUPERFLUOUS AND SHOULD BE DISMISSED.

Respondents have already conceded that the Secretary of Defense can fully effectuate any relief that might be ordered by the Court. Resp't's Mot. at 3. The question left remaining is

---

[4] Al Bihani (05-1312) and Rumi (06-0619) also argue that *Clinton* and other cited cases stand for the proposition that there are "multiple instances where sitting Presidents were compelled to comply with court orders." Al Bihani Opp. at 4; Rumi Opp. at 1-2. These cases, however, are discrete exceptions to the rule and are distinguishable from the present situation in both scope and ordered relief; typically the President was only required to provide evidence in regard to a criminal proceeding. *See e.g.*, *United States v. Fromme*, 405 F.Supp. 578 (E.D.Cal.1975) (President Ford ordered to give a deposition in a criminal trial); *United States v. McDougal*, 934 F.Supp. 296 (E.D.Ark.1996) (President Clinton ordered to give a deposition in a criminal trial). While the Supreme Court itself acknowledged such cases in *Franklin,* it recognized that they were exceptions that did not swallow the rule. *See id.* at 803-04. ("[W]e have held that the President may be subject to a subpoena to provide information relevant to an ongoing criminal prosecution, *United States v. Nixon*, 418 U.S. 683 [] (1974), but in general this court has no jurisdiction of a bill to enjoin the President in the performance of his official duties.") (internal citations and quotation marks omitted). Such cases are irrelevant here, as any relief granted by the Court would impede official actions and duties by the President that are executive, political, and discretionary in nature, to which the Court lacks jurisdiction.

[5] Some petitioners also cite to *Ex parte Merryman*, 17 F. Cas. 144 (C.C. Md. 1861), for the proposition that an order directed to the President has "significance," even if it is unenforceable. Such a characterization of *Merryman*, however, is overbroad. *Merryman* focused on Brigadier-General George Cadwalader refusal to obey a habeas order on the grounds that President Lincoln had authorized him to suspend the writ at his discretion. *Id.* at 147-48. Chief Justice Taney, sitting as a circuit justice, explained that such power rested with Congress, not the President. *Id.* at 148-52. The question here, of course, is not whether Congress or the President may suspend the writ of habeas corpus, but is who is a proper respondent in these cases.

whether it is appropriate for the Secretary of Defense, as petitioners' legal custodian, to remain the sole DOD respondent. If the Court answers that in the affirmative, the other DOD respondents should be dismissed.

In *Padilla*, the Supreme Court acknowledged a long standing, implicit exception to the immediate custodian rule. A petitioner can name supervisory officials, up to and including the Secretary of Defense, as respondents in cases of extraterritorial detentions.[6] *Padilla*, 542 U.S. at 436, n.9 (citing *United States ex rel. Toth v. Quarles*, 350 U.S. 11 (1955) (courts-martial convict detained in Korea named Secretary of the Air Force as respondent); *Burns v. Wilson*, 346 U.S. 137 (1953) (court-martial convicts detained in Guam named Secretary of Defense as respondent)). Such an exception applies in these cases where petitioners' physical detention is outside of the United States.[7] As explained in respondents' motion, the Secretary of Defense exercises legal control over petitioners and can effectuate any ordered relief. Therefore, it is superfluous to name other DOD personnel as respondents.

To the extent petitioners cite to *Rasul v. Bush*, they miss the point. *Rasul* addressed whether the Court had jurisdiction over habeas cases brought on behalf of detainees at

---

[6] Inexplicably, some petitioners argue that this exception is inapplicable here because the Court in *Boumediene*, 128 S.Ct. at 2261, concluded that, in a practical sense, the detention facility at Guantanamo Bay is within the jurisdiction of the United States. It is curious petitioners would challenge an exception to the immediate custodian rule. Had respondents not conceded otherwise, such a challenge actually raises the question as to whether the Secretary of Defense is in fact a proper respondent.

[7] In contrast, Padilla was detained in the Naval Brig in Charleston, South Carolina. *Padilla*, 542 U.S. at 432. Likewise, al-Marri was also detained at the same facility at the time of his habeas petition. *al-Marri v. Rumsfeld*, 360 F.3d at 708. The factual situations in both cases, which determined that respondents should be named pursuant to the immediate custodian rule, are therefore distinguishable from the current actions.

Guantanamo Bay under the statutory scheme that existed at the time, an issue respondents are not challenging in this motion. 542 U.S. at 478-79 ("a district court acts within [its] respective jurisdiction within the meaning of § 2241 as long as the custodian can be reached by service of process.") (internal citation and quotation marks omitted); *id.* at 481 ("Aliens held at the base, no less than American citizens, are entitled to invoke the federal courts' authority under § 2241."). But, *Rasul* is silent on the definition of a proper respondent for a detainee's habeas petition and, to that extent, is irrelevant to this motion. [8]

Some petitioners also argue that respondents' reference to the Detainee Treatment Act ("DTA")[9] is a "strained analogy" under *Boumediene*. But the Supreme Court actually underscored Congress' intent under the DTA to reduce administrative burdens on the Government: "[i]f, in a future case, a detainee files a habeas petition in another judicial district in which a proper respondent can be served . . . the Government can move for change of venue to the court that will hear these petitioners' cases, the United States District Court for the District of Columbia." Naming the Secretary of Defense, who can effectuate any ordered relief, as the sole respondent achieves the same ends. It will help to elevate the administrative difficulties inherent

---

[8] Al Bihani (05-1312) also argues that it is unclear whether the immediate custodian rule applies, because he claims there is a conflict of law between the extraterritorial detention exception detailed in *Padilla* and the holding in *Rasul*. Al Bihani Opp. at 7-10. But, as explained here, petitioners misconstrue *Rasul*. No conflict exists because the designation of a supervisory official as a respondent under the *Padilla* extraterritorial detention exception is distinct from the *Rasul* holding that granted the Court jurisdiction over Guantanamo Bay detainees, just as the 28 U.S.C. § 2242 based immediate custodian rule is distinct from the 28 U.S.C. § 2241(a) jurisdictional rule. Thus, as petitioners' physical detention is outside of the United States, it is appropriate for the Secretary of Defense to be designated the respondent here.

[9] Pub.L. 109-163, Div. A, Title XIV, § 1405(e)(5), 119 Stat. 3476 (Jan. 6, 2006) ("The Secretary of Defense shall be the named respondent in any appeal to the United States Court of Appeals for the District of Columbia Circuit under this subsection.").

in adjudicating the multiple enemy combatant Guantanamo Bay habeas cases pending concurrently in this Court. Likewise, it allows commanders at the detention facility in Guantanamo Bay to focus on their primary responsibility of running the facility.

For these reasons, the Secretary of Defense is the only appropriate respondent in these matters. All other respondents should be dismissed.

## CONCLUSION

For the reasons stated above, the government's Motion to Dismiss Improper Respondents should be granted.

Dated: September 5, 2008                    Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JOHN C. O'QUINN
Deputy Assistant Attorney General

　　　　/s/ *Scott D. Levin*
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
JUDRY L. SUBAR (D.C. Bar No. 347518)
TERRY M. HENRY
ANDREW I. WARDEN
PAUL E. AHERN
SCOTT D. LEVIN (D.C. Bar No. 494844)
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.
Washington, DC  20530
Tel:  (202) 616-9193
Fax:  (202) 616-8470
Attorneys for Respondents